UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

JOHN RONCALLO,                           :
                                         :
       Plaintiff,                        :
                                         :
v.                                       :    No. 3:09cv126 (MRK)
                                         :
SIKORSKY AIRCRAFT CORP.,                 :
                                         :
       Defendant.                        :

## RULING AND ORDER

In this case, Plaintiff John Roncallo sues his employer, Sikorsky Aircraft Corp. ("Sikorsky") for employment discrimination. Mr. Roncallo claims, among other things, that Sikorsky failed to promote him on the basis of his race, which is Caucasian, and sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*; and that Sikorsky retaliated against him following Mr. Roncallo's filing of a complaint with the Connecticut Commission on Human Rights and Opportunities ("CHRO") and instigation of his federal lawsuit, also in violation of Title VII. Mr. Roncallo also brings employment discrimination claims under the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. § 46a-60 *et seq.*, and state common law claims for promissory estoppel and intentional infliction of emotional distress.

Pending before the Court is Defendant Sikorsky's Motion for Summary Judgment [doc. # 35]. For the reasons detailed below, the Court GRANTS Sikorsky's Motion for Summary Judgment [doc. # 35] with respect to Mr. Roncallo's Title VII race-discrimination claim, Title VII sex-discrimination claim, and Title VII retaliation claim. Having disposed of Mr. Roncallo's only federal claims, the Court declines to exercise supplemental jurisdiction over Mr. Roncallo's state law claims, which are therefore DISMISSED without prejudice to renewal in state court.

**I.**

The following provides some factual background to Mr. Roncallo's Third Amended Complaint [doc. # 19]. Further facts will be recited, as needed, in later sections. As is required on a motion for summary judgment, the Court construes the facts in the light most favorable to Mr. Roncallo, the non-moving party. *See Jaegly v. Couch*, 439 F.3d 149, 151 (2d Cir. 2006).

Sikorsky designs, manufactures, and services helicopters and parts for helicopters. Sikorsky's main facility is located in Stratford, Connecticut. In 2007, Sikorsky opened a second, smaller facility in Stratford known as the Broadbridge facility. Mr. Roncallo began his employment with Sikorsky in 1987 as a test engineer in the Stratford facility, earning approximately $30,000 per year. Over the next several years, Mr. Roncallo continued to work in various engineering positions of increasing responsibility and salary. Mr. Roncallo currently works as an engineer at Sikorsky's Stratford facility, earning approximately $98,000 per year. Sikorsky categorizes positions using a numerical "labor grade" system, with a lower number representing a higher labor grade. Hence, a labor grade L5 ("L5") is one level below a labor grade L4 ("L4"). The job functions of L4s and L5s overlap. Mr. Roncallo is currently in an L5 position. Until 2009, Mr. Roncallo worked as a group leader on the CH-53K helicopter program ("53K").

During all time periods relevant to this case, Mr. Roncallo worked in Sikorsky's Ground Test Engineering Group ("Ground Test"), which is managed by Clemente Mascola. Ground Test is organized by helicopter project, with a team devoted to a particular helicopter or type of helicopter. Each Ground Test team is ordinarily headed by a group leader.

In late 2005 or early 2006, Sikorsky was working on a proposal to win a contract to work on the United States Presidential helicopter. Certain employees were reassigned in order to facilitate

Sikorsky's work on this proposal, including Andrew Criscuolo, Mr. Mascola, and Mr. Roncallo. According to Mr. Roncallo, while he was working on the 53K as a group leader, Gregg Ambrose, a manager in Ground Test, "promised" Mr. Roncallo a promotion to L4 by March 2006. *See* Roncallo Dep. [doc. # 36-2] 26:11-20. Shortly thereafter, Sikorsky learned that it did not win the Presidential helicopter contract. Because there was no longer any work on the Presidential helicopter proposal, Mr. Ambrose moved Messrs. Mascola and Criscuolo, who were both L4s at the time, to the 53K and moved Mr. Roncallo back to his former job on the RDS-21. Mr. Roncallo was not given a promotion to L4.

Sikorsky is a government contractor, and pursuant to Executive Order 11246, it is required to establish and follow an affirmative action plan and establish goals for recruitment of under-represented groups. *See* Exec. Order No. 11,246, 3 C.F.R. 339 (1964-1965), *reprinted as amended in* 42 U.S.C. § 2000e (2000). To comply with its mandated affirmative action goals, Sikorsky attempts to include qualified minorities in the slate of candidates for supervisors to consider when hiring or promoting. Sikorsky evaluates promotions through a job requisition system. To apply for a promotion through the job requisition system, applicants may "post" to a position through the online system.

In March 2008, Mr. Mascola created a job requisition for an L4 manager position, Job Requisition No. 68047, with a title of Senior Engineering Group Leader. Sikorsky claims, and Mr. Roncallo does not dispute, that Mr. Mascola created the 68047 posting to allow Mr. Mascola to pursue promotions within Ground Test. Within Ground Test in March 2008, there were seven individuals performing group leader functions. Two of the individuals were L4s, and five individuals–Charles Losito, John Bufort, Joe Nuttall, Cliff Smith, and Mr. Roncallo–were L5s. Mr.

Mascola and George Neyssen, another manager in Ground Test, encouraged Mr. Roncallo and others to post for the newly created L4 manager position, Job Requisition No. 68047.

Mr. Neyssen explained in an e-mail to Mr. Roncallo that "we are making another attempt to get more L4s in our section . . . . Understand, this was hard before, and it's getting even harder. . . . I anticipate there will be other candidates applying for this position, and ultimately the assignment may go to someone else." Pl.'s Ex. 12 [doc. # 41-13]. Mr. Mascola was the hiring manager responsible for reviewing and interviewing the applicants for Job Requisition No. 68047. Eighteen individuals, including Mr. Roncallo, applied for the position. Mr. Mascola himself does not have the authority to promote or hire; he only recommends promotions and hires through the job requisition process. The ultimate decision about whether to promote or hire a candidate is made by management above Mr. Mascola, and Human Resources.

The parties agree that after completing the interview process, Mr. Mascola ranked and recommended four individuals for promotion under Requisition No. 68047. Sikorsky claims that Mr. Mascola ranked Charles Losito highest, followed by Joseph Nuttall, and then Clifford Smith, with Mr. Rocallo ranked last among the four candidates recommended. *See* Loc. R. 56(a)(1) Statement [doc. # 37] ¶ 51. Christine Cassina, a Human Resources Manager at Sikorsky, has affirmed that Mr. Mascola ranked the four recommended candidates in this order. *See* Cassina Aff. [doc. # 36-6] ¶ 5-6. Mr. Roncallo denies that Mr. Mascola ranked the candidates in this order, citing the fact that at his deposition, Mr. Mascola could not remember the exact order in which he had ranked the candidates. *See* Loc. R. 56(a)(2) Statement [doc. # 41-22] ¶ 51. When asked at the deposition whether he could recall the ranking of the four individuals, Mr. Mascola testified:

> I think the top two were Joe Nuttall and [Charles] Losito. I kind of waffled. You know, as a function of time, it changed. . . . it might have been Losito and Nuttall

were on the top and Cliff and John were on the lower part. So I can't remember the exact order.

*See* Mascola Dep. [doc. # 36-3] 22:24-23:5.

After Mr. Mascola made his initial recommendations, Human Resources asked him to go back and reevaluate the slate of candidates once it had been populated with some new applicants. Mr. Mascola has testified that after he initially submitted his four recommended candidates, he was asked to "revisit the resumes because they were going to populate [the postings] with diversity candidates . . . to provide . . . the potential . . . to promote . . . someone with a diverse background." *See* Mascola Dep. [doc. # 41-19] 25:4-8. All of Mr. Mascola's initial selections were white males. Approximately one month later, after Mr. Mascola revisited the postings and reevaluated the candidates, he again recommended the same four applicants he had recommended previously: Mr. Losito, Mr. Nuttall, Mr. C. Smith, and Mr. Roncallo. All four individuals recommended by Mr. Mascola were white males and all of them were already performing group leader functions as L5s in Ground Test. The company ultimately decided not to hire anyone for Job Requisition No. 68047, and the position was never filled.

Since 2006, Mr. Roncallo has applied for other positions at Sikorsky, at least one of them at the L4 level. Records from Sikorsky's job requisition system show that in three cases, Mr. Roncallo unsuccessfully applied for positions at Sikorsky that were instead awarded to female or minority applicants. *See* Pl.'s Exs. 13, 14, 15 [doc. # 41-14], [doc. # 41-15], [doc. # 41-16].

Mr. Roncallo filed his initial charge with the CHRO on July 10, 2008, and he filed his Complaint against Sikorsky in this Court on January 26, 2009. Mr. Roncallo moved from 53K to the Black Hawk helicopter project in mid- to late-2009. *See* Roncallo Dep. [doc. # 36-2] 18. Mr.

Roncallo now works at Sikorsky's Stratford facility and reports to Mr. Nuttall.

## II.

Summary judgment is appropriate only when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(b). A genuine issue of fact exists when "a reasonable jury could return a verdict for the nonmoving party," and facts are material to the outcome if the substantive law renders them so. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). The moving party bears the burden of demonstrating that no genuine issue exists as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986). If the moving party carries its burden, the party opposing summary judgment "may not rest upon mere allegations or denials," rather, the opposing party must "set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The Court must draw all ambiguities and inferences in favor of the nonmoving party. *See Anderson*, 477 U.S. at 255. However, to defeat a motion for summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249-50.

The Second Circuit has cautioned that district courts must be "particularly cautious about granting summary judgment to an employer in a discrimination case when the employer's intent is in question. Because direct evidence of an employer's discriminatory intent will rarely be found, 'affidavits and depositions must be carefully scrutinized for circumstantial proof which, if believed,

would show discrimination.'" *Schwapp v. Town of Avon*, 118 F.3d 106, 110 (2d Cir. 1997) (citations omitted) (quoting *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1224 (2d Cir. 1994)). However, even where an employer's intent is at issue, "a plaintiff must provide more than conclusory allegations of discrimination to defeat a motion for summary judgment." *Id.* "[A] party may not 'rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment.'" *Lipton v. Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995) (quoting *Knight v. United States Fire Ins. Co.*, 804 F.2d 9, 12 (2d Cir. 1986)).

## III.

### A. Title VII Race- and Sex-Discrimination

As this Court has had the opportunity to discuss many times before, race-based and sex-based employment discrimination claims are governed by the familiar burden-shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under the *McDonnell Douglas* framework, a plaintiff can establish a *prima facie* case of discrimination by showing that: "1) she is a member of a protected class; 2) she was qualified for her position; 3) she suffered an adverse employment action; and 4) the action occurred under circumstances giving rise to an inference of discrimination." *Norville v. Staten Island Univ. Hosp.*, 196 F.3d 89, 95 (2d Cir. 1999).

In his Third Amended Complaint, Mr. Roncallo asserts a claim for discriminatory failure to promote. As the Second Circuit has noted, *McDonnell Douglas* provides a specific framework for a *prima facie* case based on an alleged discriminatory failure to promote: "plaintiff must allege that (1) she is a member of a protected class; (2) she applied and was qualified for a job for which the employer was seeking applicants; (3) she was rejected for the position; and (4) the position remained open and the employer continued to seek applicants having the plaintiff's qualifications." *Brown v.*

*Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir. 1998) (quotation marks omitted).

For all Title VII employment discrimination claims, if the plaintiff makes out a *prima facie* case, the burden shifts to the defendant to articulate a legitimate, non-discriminatory rationale for the adverse action. *See McDonnell Douglas*, 411 U.S. at 802. If the defendant does so, the ultimate burden of proof shifts back to the plaintiff to demonstrate that the defendant's articulated justification is merely a pretext for discrimination. *See id.* at 804. The plaintiff may meet this ultimate burden "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256 (1981). The evidence that demonstrates an employer's explanation is mere pretext may be identical to the evidence introduced by the plaintiff to establish his *prima facie* case. *See id.* at 255 n.10.

Mr. Roncallo has alleged that Sikorsky failed to promote him to L4 numerous times, going back to 2006, and suggests that the decisions not to promote him during this time period were based on his race and gender. Under federal law, a plaintiff must file a charge of employment discrimination within 300 days of the offense. *See* 42 U.S.C. § 2000e-5; *Ortiz v. Prudential Ins. Co.*, 94 F. Supp. 2d 225, 232 (D. Conn. 2000). Mr. Roncallo filed his initial charge with the CHRO on July 10, 2008, which means that, with his Title VII claims, Mr. Roncallo cannot challenge any actions that occurred before September 14, 2007. Although it is true that pursuant to the continuing violation doctrine, courts may occasionally consider events that occurred outside the 300-day period, *see Lightfoot v. Union Carbide Corp.*, 110 F.3d 898, 907 (2d Cir. 1997), a failure to promote is considered a "discrete act" not subject to the continuing violations doctrine. *See Petrosino v. Bell Atl.*, 385 F.3d 210, 220 (2d Cir. 2004). Hence, the continuing violation exception to the 300-day

period does not apply to Mr. Roncallo's failure-to-promote claims. *See, e.g.*, *Byra-Grzegorczyk v. Bristol-Myers Squibb Co.*, 572 F. Supp. 2d 233, 244 (D. Conn. 2008) (holding that the plaintiff could not make out a failure to promote claim because the plaintiff could not show that "at least one incident in which [she] applied for and [was] denied a promotion occurred within the 300-day period prior to the filing of [her] CHRO complaint[].").  Any claims based on Sikorsky's failure to promote Mr. Roncallo to an L4 position in 2005 and 2006 are time-barred.

Mr. Roncallo has provided some evidence that he was rejected from positions at the L4 level in 2008 and 2009, and that the company instead filled the positions with female candidates. *See* Pl.'s Ex. 13 [doc. # 41-14], Pl.'s Ex. 15 [doc. # 41-16]. However, Mr. Roncallo has not suggested that he was more qualified than the individuals actually hired for the positions, *see Byrnie v. Town of Cromwell Bd. of Educ.*, 243 F.3d 93, 103 (2d Cir. 2001), nor has he provided any other evidence regarding the rejections that would support an inference of unlawful discrimination. Although a Title VII plaintiff does not need to provide direct evidence of an employer's discriminatory intent, *see Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008), the plaintiff cannot avoid summary judgment "simply by asserting a metaphysical doubt as to the material facts." *Woodman v. WWOR-TV, Inc.*, 411 F.3d 69, 75 (2d Cir. 2005). In his deposition, Mr. Roncallo suggested that the company was "promoting more minorities to the [L4] principal engineer level." Roncallo Dep. [doc. # 36-2] 83:23-25. But he admitted that he could only identify two minority or female employees who had been promoted in this way, and that in one case, he himself did not have the expertise for the position, and in the other case, he had no knowledge of the qualifications of the person in question. *See* Roncallo Dep. [doc. # 36-2] 85:15-16, 88:1-5.

The only remaining incident relevant to Mr. Roncallo's Title VII employment discrimination

claims is his application for Job Requisition No. 68047. Although Mr. Roncallo presents Job Requisition No. 68047 as a position to which he was not promoted on account of his gender and race, Mr. Roncallo's allegations regarding Job Requisition No. 68047 do not form a traditional failure-to-promote claim. Mr. Roncallo does not allege that Sikorsky decided to reject Mr. Roncallo for the position and hire someone else on account of Mr. Roncallo's gender and race, or even that Sikorsky rejected Mr. Roncallo but continued to seek applicants for the position with Mr. Roncallo's qualifications. Rather, Mr. Roncallo alleges that Sikorsky decided to close the position – that is, not hire anyone – in order to discriminate against white males. Because Sikorsky did not reject Mr. Roncallo and continue to seek applicants with Mr. Roncallo's qualifications, Mr. Roncallo's allegations do not satisfy the *prima facie* standard for Title VII failure-to-promote claims. *See, e.g.*, *Singh v. N.Y. City Off-Track Betting Corp.*, 2005 WL 1354038, *9 (S.D.N.Y. May 27, 2005) (finding that the plaintiff did not make out a *prima facie* case because "the plaintiff ha[d] provided no evidence that would support his contention that the position remained open in substance and the [employer] continued to seek applicants with the plaintiff's qualifications"). There also are reasons to question whether Mr. Roncallo has made out a *prima facie* case under the more general *McDonnell Douglas* framework.

First, because Mr. Roncallo "was not directly denied a promotion" under Job Requisition No. 68047, it is not immediately clear that he suffered an adverse employment action. *See Darden v. Town of Stratford*, 420 F. Supp. 2d 36, 42 (D. Conn. 2006). At least two district courts within the Second Circuit have considered claims based on actions similar to the closure of Job Requisition No. 68047, and concluded that closure of a position may constitute an adverse employment action for the purposes of Title VII. *See Darden*, 420 F. Supp. 2d at 43 (concluding that the plaintiff suffered

an adverse employment action when as "an indirect result of . . . restructuring . . . [the] plaintiff was denied a promotion she anticipated she would receive"); *Feder v. Bristol-Myers Squibb Co.*, 33 F. Supp. 2d 319, 325 (S.D.N.Y. 1999) (deciding that a "trier of fact could reasonably conclude that [the plaintiff] suffered a material adverse employment action" when the "position to which [the plaintiff] aspired was eliminated"). To the extent that closure of Job Requisition No. 68047 "foreclos[ed] a logical promotion path" for Mr. Roncallo, a trier of fact could find that closure of the position constituted an adverse employment action, satisfying the third element of the *prima facie* standard. *See Feder*, 33 F. Supp. 2d at 325.

However, the Court is not convinced that Sikorsky's closure of Job Requisition No. 68047 denied Mr. Roncallo a promotion he legitimately expected to receive. *Cf. Quarless v. Bronx-Lebanon Hosp. Ctr.*, 228 F. Supp. 2d 377, 386 (S.D.N.Y. 2002), *aff'd* 75 F. App'x 846 (2d Cir. 2003) (finding no adverse employment action where "the Plaintiff was informed that no decision regarding [a] new position had been made and that the Plaintiff's promotion to the position was dependent upon determinations that the position was necessary . . . and that the Plaintiff was the best person for the job"). The courts that have classified closure of a position as an adverse employment action confronted facts somewhat different from those of Mr. Roncallo's case. In *Feder v. Bristol-Myers Squibb Co.*, the alleged adverse employment action was the defendant's refusal to appoint the plaintiff to a reporting relationship with a particular executive. *See* 33 F. Supp. 2d at 324. The defendant argued that the plaintiff did not receive the appointment because the executive had too many "direct reports" already, but did not suggest that the plaintiff would have been denied the appointment in favor of someone else even if the reporting relationship she desired was feasible. *See id.* at 327 n.62. In *Darden v. Town of Stratford*, the position that was eliminated would have been

11

filled on the basis of seniority. *See* 420 F. Supp. 2d at 38.

In Mr. Roncallo's case, the parties agree that only one person, if any, could be promoted under Job Requisition No. 68047. In his email inviting Mr. Roncallo to apply for the position, Mr. Neyssen noted: "I anticipate there will be other candidates applying for this position, and ultimately the assignment may go to someone else." Pl.'s Ex. 12 [doc. # 41-13]. Among the four people recommended for the position by Mr. Mascola, Mr. Mascola has testified that Mr. Roncallo was ranked third or fourth, and Ms. Cassina of Human Resources has testified that Mr. Roncallo was ranked fourth.[1] Beyond his own speculation, there is no reason to believe that Mr. Roncallo would have been promoted under Job Requisition No. 68047, had it remained open.

Second, assuming *arguendo* that Mr Roncallo has demonstrated that he suffered an adverse employment action, Mr. Roncallo has produced little if any evidence of acts or statements by Sikorsky that would give rise to an inference that Sikorsky discriminated on the basis of race or sex when it made the decision to close Job Requisition No. 68047. Mr. Roncallo has not shown that Sikorsky had a policy or even a pattern of refusing to promote white males; and he cannot point to any discriminatory statements by Sikorsky employees who made hiring decisions. At best, Mr. Roncallo has offered evidence suggesting that the company decided to close Job Requisition No. 68047 only after the hiring manager failed to recommend any minority or female candidates for the position; and, less convincingly, that the job requisition itself was created to replace a black male employee. *See* Mascola Dep. [doc. # 41-19] 21:14-26:19; Pl.'s Ex. 12 [doc. # 41-13] at 2.

---

[1] Since all four of the recommended candidates were white males, Mr. Roncallo's low ranking within this group does not merge with the ultimate question of whether Sikorsky's failure to promote him was the result of sex- and race-based discrimination. *Cf. Feder*, 33 F. Supp. 2d at 327 (rejecting defendant's argument that plaintiff had not met the *prima facie* requirement of qualification for the position sought, because the issue of whether the defendant actually relied on its stated hiring criteria was "indistinguishable from the ultimate issue on the merits").

Nonetheless, given that the threshold for establishing a *prima facie* case of employment discrimination is quite low, *see Collins v. New York City Transit Auth.*, 305 F.3d 113, 118 (2d Cir. 2002), the Court will assume, without deciding, that Mr. Roncallo has established a *prima facie* case of discrimination under Step 1 of the *McDonnell Douglas* test.

Under Step 2 of the *McDonnell Douglas* test, Sikorsky has presented a legitimate, non-discriminatory reason for its decision to close the position: "Because Research & Engineering was already exceeding its L4 headcount capacity, [the company] decided not to hire anyone to fill Requisition No. 68047 at that time." *See* Mem. in Supp. [doc. # 36] 6-7; 15-16. Mr. Neyssen, who invited Mr. Roncallo to apply for the job, told Mr. Roncallo in advance that a promotion to L4 would be difficult, even given the new job requisition, because "get[ting] more L4's in our section . . . was hard before, and it's getting even harder." *See* Pl.'s Ex. 12 [doc. # 41-13]. Sikorsky maintains that the decision not to fill Job Requisition No. 68047 was unexceptional. *See* Mem. in Supp. [doc. # 36] 7 (citing Cassina Aff. [doc. # 36-6] ¶ 9). Sikorsky has provided evidence that of the twenty L4 job requisitions posted in Mr. Roncallo's division in 2008, seven positions were left unfilled, and twelve were filled with white males. *See* Cassina Aff. [doc. # 36-6] ¶ 9. Mr. Roncallo does not dispute those statistics.

Because Sikorsky has offered a legitimate, non-discriminatory explanation for its decision, the burden shifts to Mr. Roncallo to show that the proffered explanation is merely a pretext for illegal discrimination. Mr. Roncallo has not met this burden.

The best evidence Mr. Roncallo can offer in support of his argument that Sikorsky's explanation is mere pretext is the fact that the position was closed after (1) Human Resources told Mr. Mascola it wanted to populate the list with more diverse candidates, and (2) Mr. Mascola

subsequently returned a list of the same four white males.  However, Mr. Roncallo has not produced evidence controverting Sikorsky's claim that the company was trying to reduce the number of L4s. *See* Mem. in Supp. [doc. # 36] at 15.  Additionally, he does not dispute Sikorsky's claim that it is not uncommon for the company to elect not to fill a particular job requisition.  Mr. Roncallo also does not dispute that from 2005 through 2009, Sikorsky promoted more than 200 individuals to L4, the majority of whom were white males.  *See* Mem. in Supp. [doc. #36] at 12 (citing Cassina Aff. [doc. # 36-6] ¶ 10).  Mr. Roncallo himself has testified that Ground Test is managed entirely by white males and that his chain of command up to the President of Sikorsky is comprised of white males. *See* Roncallo Dep. [doc. # 36-2] 44:15-46:18.

Although Mr. Roncallo agrees with Sikorsky that Mr. Mascola created the Job Requistion No. 68047 posting to allow Mr. Mascola to pursue promotions of individuals within Ground Test, Mr. Roncallo has also made the claim that a jury could decide that Sikorsky's proffered explanation for its decision to close the position is pretext because the position was a "replacement for Greg Sanders, a black male." *See* Mem. in Opp. [doc. # 41] at 15.  There is some evidence that Job Requisition No. 68047 was related to the replacement of Mr. Sanders.  In his email to Mr. Roncallo, George Neyssen described the job as "an L4 position and . . . a repost for the replacement of Greg Sanders." *See* Pl.'s Ex. 12 [doc. # 41-13].  Mr. Neyssen explained that they were planning to "split the H-60 Group Leader position into Mechanical and Structural . . . and this is for the H-60 Mechanical Group Leader position." *Id.*  Mr. Neyssen also noted that "the specific work assignment for each group leader is assigned by Clem [Mascola], not HR," and "what's most important here is the retention of the L4 position in Ground Test." *Id.*

Sikorsky claims that Job Requisition No. 68047 was a generic posting for an L4 group leader

14

position and not designed to "replace" a particular function or particular person. *See* Reply Br. [doc. # 45] at 4. In his deposition, Mr. Mascola denied that the position was posted to fill a position previously held by Greg Sanders, and noted that it was not designated as a "Replacement Requisition," and did not even mention H-60. *See* Mascola Dep. [doc. # 41-19] 15:19-16:18. Reinforcing Sikorsy's contention that Job Requisition No. 68047 was not a replacement requisition, Gregg Ambrose testified at his deposition that, unlike Job Requisition No. 68047, Mr. Sanders' old position *was* filled by Joseph Nuttall, one of the four white males recommended by Mr. Mascola for Job Requisition No. 68047. *See* Ambrose Dep. [doc. # 41-18] 16:11-24.

Mr. Roncallo can offer no direct evidence that Sikorsky acted with a discriminatory motive, and he has not given the Court a reason to conclude that Sikorsky's proffered explanation for its decision to close Job Requisition No. 68047 should not be given credence. *See Burdine*, 450 U.S. at 256. Although the fact that the company decided to close the position following Mr. Mascola's recommendation of four white male candidates may be sufficient to give rise to "speculation and conjecture," it is not sufficient to defeat Sikorsky's lawful explanation for its action or to support an ultimate inference of unlawful discrimination. *See Woodman*, 411 F.3d at 75. Given the lack of any evidence that would allow a reasonable jury to conclude that Mr. Roncallo has met his burden under the *McDonnell Douglas* standard, summary judgment in favor of Sikorsky on Mr. Roncallo's Title VII race- and sex-based discrimination claims is appropriate.

**B. Title VII Retaliation**

To survive a motion for summary judgment on a Title VII retaliation claim, a plaintiff must present evidence showing:

> (1) [he] was engaged in an activity protected under Title VII; (2) the employer was aware of [his] participation in the protected activity; (3) the employer took adverse

action against [him]; and (4) a causal connection existed between [his] protected activity and the adverse action taken by the employer.

*Mack v. Otis Elevator Co.*, 326 F.3d 116, 129 (2d Cir. 2003). Title VII's anti-retaliation provision does not just apply to actions affecting compensation, terms, conditions, or privileges of employment. *See Burlington Northern & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 61 (2006). However, an alleged retaliatory act must still be one that would be "viewed by a reasonable employee as being materially adverse." *See Kaytor v. Elec. Boat Corp.*, 609 F.3d 537, 555 (2d Cir. 2010). "[A]n employment action is materially adverse if it 'well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *Id.* (quoting *Burlington Northern*, 548 U.S. at 68). Even if all factual disputes are resolved in Mr. Roncallo's favor, Mr. Roncallo has failed to show that Sikorsky took action against him that was "materially adverse." Hence, the Court not need to address the other three elements.

Mr. Roncallo alleges that in various ways, Sikorsky has retaliated against him because of Mr. Roncallo's efforts to enforce his rights under Title VII. Among these allegedly retaliatory acts are the addition of a mural to a wall near Mr. Roncallo's office at the Broadbridge facility; "negative[]" treatment by co-workers and colleagues, *see* Mem. in Opp. [doc. # 41] at 19; and Mr. Roncallo's temporary transfer from a private office to a cubicle while he was working at the Broadbridge facility.

The requirement that an act of retaliation be "viewed by a reasonable employee as . . . materially adverse" is an objective standard. *See Kaytor*, 609 F.3d at 555. According to Mr. Roncallo, the Broadbridge facility mural was designed to "harass the Plaintiff by depicting all of the minorities and females around him [in the picture]." *See* Local R. 56(a)(2) Statement [doc. # 41-22] ¶ 78. The Court has found no case law that would support a conclusion that the depiction of

individuals not of Mr. Ronallo's race and gender, who were not even his co-workers, in a mural allegedly depicting Mr. Roncallo's co-workers would "have dissuaded a reasonable worker from making or supporting a charge of discrimination." *See Burlington Northern*, 548 U.S. at 68. Despite Mr. Roncallo's contention that "the mural caused Plaintiff significant stress and anxiety requiring him to call in sick during the official unveiling of the mural," *see* Local R. 56(a)(2) Statement [doc. # 41-22] ¶ 78, the Court is not persuaded that the installation of the mural described by Mr. Roncallo constituted a materially adverse action.

Similarly, "petty slights" and "minor annoyances" such as "snubbing by supervisors and co-workers" are not sufficient to support a charge of Title VII retaliation. *See Burlington Northern*, 548 U.S. at 68 (citations and quotation marks omitted). Therefore, even if taken as true, Mr. Roncallo's claim that "[s]ince the filing of his lawsuit, Plaintiff has noticed that individuals will not make eye contact with him and refuse to speak to him" would not support a charge of Title VII retaliation. *See* Local R. 56(a)(2) Statement [doc. # 41-22] ¶ 58; Roncallo Dep. [doc. # 36-2] 95:4-96:25.

The Court is also unpersuaded by Mr. Roncallo's claim that his temporary transfer from a private office to a small cubicle in February 2009 constituted unlawful retaliation under Title VII. Mr. Roncallo has testified that his temporary relocation to the cubicle at Broadbridge was "a very visible move, very degrading move, and very targeted," *see* Roncallo Dep. [doc. # 36-2] 163:17-18, but offers no further evidence that a reasonable employee at Sikorsky would have viewed the action as materially adverse. Mr. Roncallo has not disputed Sikorsky's claim that cubicles, rather than private offices, are standard for L5 employees. Moreover, the temporary move to a cubicle did not require Mr. Roncallo to engage in "more arduous or dirtier" work, *see Burlington Northern*, 548 U.S. at 71 (quotation marks omitted); he was not placed in a job that required fewer qualifications, which

17

could be "an indication of prestige," *id.*; and he was not "forced to do work normally performed by clerical and lower-level personnel." *See Kessler v. Westchester Cty. Dep't of Social Servs.*, 461 F.3d 199, 209-10 (2d Cir. 2000).

Finally, Mr. Roncallo's "belie[f] that Defendant has provided damaging references to prospective employers" is pure speculation. *See* Local R. 56(a)(2) Statement [doc. # 41-22] ¶ 56; Roncallo Dep. [doc. # 36-2] 30:1-22. Because Mr. Roncallo has provided no evidence that Sikorsky took any materially adverse action against him following Mr. Roncallo's filing of his CHRO complaint and federal district court action, Mr. Roncallo's Title VII retaliation claim cannot succeed, and the Court will enter summary judgment in favor of Sikorsky.

### IV.

Mr. Roncallo also asserts sex- and race-based discrimination claims under the Connecticut Fair Employment Practices Act ("CFEPA"), and state law claims of promissory estoppel and intentional infliction of emotional distress. Supplemental or pendent jurisdiction is a matter of discretion, not of right. *See United Mine Workers v. Gibbs*, 383 U.S. 715, 715-26 (1966). A court may decline to exercise supplemental jurisdiction when the court has dismissed all claims over which it has original jurisdiction. *See* 28 U.S.C. § 1367(c)(3); *Spear v. Town of West Hartford*, 771 F. Supp. 521, 530 (D. Conn. 1991). Because the Court grants Sikorsky's motion for summary judgment with regard to Mr. Roncallo's federal claims, the Court declines to exercise supplemental jurisdiction over Mr. Roncallo's state law claims. Should he wish to do so, Mr. Roncallo is free to raise his state law claims in the Connecticut state courts.

### V.

For the foregoing reasons, Sikorsky's Motion for Summary Judgment [doc. # 35] is

GRANTED with respect to Mr. Roncallo's Title VII employment discrimination and retaliation claims. Mr. Roncallo's remaining state law claims are DISMISSED without prejudice to renewal in state court. **The Clerk is directed to enter judgment for Sikorsky on Mr. Roncallo's Title VII employment discrimination and retaliation claims, and to close this file.**

IT IS SO ORDERED

/s/     Mark R. Kravitz
      United States District Judge

**Dated at New Haven, Connecticut: October 22, 2010.**